Avery, J.
The defendant in the original action is in possession of the premises in dispute, under the grand children of Henry Wick, deceased. Their claim to these premises is denied by the lessors of the plaintiff, who assert that the legal title and the right of possession belong either to the executors of said Henry, or to his children, devisees in his will. Which of the parties has the right, and should therefore, ultimately succeed in the action, depends upon the construction to be given to this will.
The second, third, fourth and sixth of the errors assigned, all relate to this right and construction; presenting the important question, and indeed, from the result to which the Court has been conducted, the only question of any consequence in the case; for the decision by the Court below, upon any one or all of the other points arising under the assignment, whether correct or erroneous, would not affect the judgment now to be rendered.
The will begins with the appointment of three of the testator’s sons, to be his executors. Next it makes provision for giving her certain sums of money, the use of some real estate and *257 furniture, and $500 to be paid her yearly. After closing the arrangement respecting his widow, the testator proceeds as follows: “I will and bequeath to each of my children, now living, what land and town property I have rented to them, as their property forever; and the property rented to Thomas L. Bane, I will to his wife Matilda Bane.”.
By this provision, the testator gives to each of his children, then living, as their property forever, all the land and town property which he had before rented to them; thus converting at once, in -each case, the leasehold into a fee simple estate. He then proceeds with respect to lands similarly situated, and in the same sentence, gives the farm and town property rented to Thomas L. Wick, deceased, to the three children of Thomas L. Wick.
So far, he shows an intention to treat the children of Thomas, in regard to the land rented to their father, just as he had treated his own children; devising to them the same land which had been rented to their father, and intending it to be theirs, as an estate in fee simple, should they live to enjoy it.
Upon the trial in the Common Pleas, there was offered in evidence by the plaintiffs, a lease from Henry Wick to T. L. Wick. It does not appear by the bill of exceptions that this lease was rejected by the Court, and there seems no valid reason for excluding it. It is therefore regarded, by us, as competent evidence in the issue between these parties. The premises for which the present action is brought, are described in the declaration as a part of lot number 29, containing 76 acres, more or less, and known as the “ King farm.” It was the “ King farm ” which Henry Wick, in the.lease above mentioned, rented to T. L. Wick. The land then in controversy, the “King farm ” of the lease, is “ the farm rented,” in the language of the will, to Thomas L. Wick, deceased.
There are peculiar features in this lease, such as would not be likely to appear in a contract between strangers, but well suited to the relations of mutual confidence between father and son.
The farm is leased to the son at a trifling rent, $12 50, pay *258 able yearly, so long as occupied. That this is but an inconsiderable rent, seems apparent enough from the language of the lease itself, in reference to the farm and its products. Then, on the other hand, the son is content to hold possession at the mere will of the father. The father reserves in the lease, all the coal and' timber which he may want for his own use, the hay and grain on the farm at the time it was rented, (December 1st, 1837,) and the privilege of taking the rented land in his own possession, whenever he may choose. Of this land, the children of Thomas L. Wick are still in possession, or rather the defendant, who is holding under them.
Wben it is discovered that all the lands rented by Henry Wick to his other children, and by his will devised to them respectively, in fee, and this land rented to T. L. Wick, and found in the possession of his children, is devised by the will to the same children, and so devised as at all events to be owned by them in fee simple, if they should live to.enjoy it, we find no difficulty in considering these children as special objects of the testator’s bounty, like his other children, and entitled to be so regarded in the construction of his will. And the inference is deemed not unreasonable, that with respect to the land which had been rented, he intended to deal alike with his children that were living, and the children of one who was deceased. ■ These children were of his blood,-and it was therefore with no design to withhold from them, that he said he. wished none but the kindred of his blood to enjoy his property.
Here it may be remarked that a phrase occurs in the will, and directly following that which speaks of the support and education of the children, which is in these words, “ without any further charge against said children.” Now from anything appearing throughout the will, it is difficult to perceive the application or object of that phrase. But supposing the testator, when drawing this part of the will, to have had in his contemplation the lease before referred to, wherein a small annual rent is charged on the land, then the application is not so difficult. He would naturally enpugh use the expression “ without further *259 charge against said children,” in order to relieve them from the annual payment, if it was his understanding, that the income of the land would continue to go for their benefit. ■
Further, the testator charges in his will a small sum upon his children, to be given to these children of T. L. Wick, for their support and education. In his lifetime, he allowed the proceeds of the farm to be applied towards the support of T. L. Wick’s family. He provided that after his death the farm should go to the children, and it would seem to be reasonable, that he should design the annual proceeds to be applied towards the support of the children, rather than be converted into' money, and put into a general fund, to be afterwards distributed amongst the heirs ; and this presumption derives strength from the fact, that when the disposition of this land is distinctly in the mind of the testator, and he is intending to make a conveyance of it in fee, he does not make any other, or any arrangement in express words, for its present occupancy and use.
It is true, that by the terms of the will in reference to these children, “providing they live to legal age,” it might under other circumstances be plausibly argued, that no present interest was intended to pass. But the force of this argument is greatly awakened if not destroyed by the considerations above noticed; and further, by the testator’s use, a few lines further on, of the same expression, “ providing they live to legal age,” when it could hardly have been understood by him, as excluding the children until of age, from the benefit of the provision in their behalf. The provision is, “ and when said children arrives of age, or when my executors may think most for the advantage of said children, they (the executors) may give each of them one thousand dollars, which I will to them, providing they live to legal,age.” He thus authorizes a gift of $ 1,000 to each of them, when they arrive of age, or when the executors may think most to the advantage of the children; that is at the discretion of the executors, without reference to the age of the children, and consulting, in the exercise of this authority, the benefit of the children alone. Then follows the expression, *260 “ which 1 will to them providing they live to legal age.” By this, he could not have designed to restrain the executors discretion till a period after the children were of age. Upon the payment of the $1,000 to each, the annual payment of the $30, directed in the will to be made for the support and education of the children, was to stop. This could have been intended barely as a provision for support and education during the minority of the children, and not as an annuity for an indefinite period after arriving at full age, or for life.
The will under consideration is very inartificially drawn, and certainly the question presented to us is not without its difficulties. But viewing the will in its various provisions, and in connection with the facts legitimately in evidence, and guided by the governing principle in the construction of a will, the intention of the testator, we have all come to the conclusion, that the legal title to this land is at present vested in the children of Thomas L. Wick, subject only to be divested, upon their death, before coming to what is termed in the will their legal age.
This question settled, and as before remarked, there is nothing left of all the errors assigned, that can have any importance in the case. We reverse the judgment of the Common Pleas, as to the single principle involved in the assignments first noticed, but not as to any of the rest.