IN RE JUDGES OF CEDAR RAPIDS MUNICIPAL COURT.

No. 51591.

(Reported in 130 N.W.2d 553)

SEPTEMBER 22, 1964.

PER CURIAM—Article V, section 4, of the Constitution of Iowa, so far as pertinent here, provides: "The Supreme Court shall * * * exercise a supervisory [and administrative] control over all inferior Judicial tribunals throughout the State."

In Hutchins v. City of Des Moines, 176 Iowa 189, 216, 157 N.W. 881, 890, we had occasion to examine the meaning of the words "supervisory control" as then found in the constitution. We said: "To supervise is 'to oversee for direction; to superintend; to inspect with authority' and to control means 'to exercise restraining or governing influence over * * * to regulate; to govern; to overpower.' From these definitions, that of supervisory control may be deduced; * * *."

In Von Rosenberg v. Lovett, Tex. Civ. App., 173 S.W. 508, 514, it was held: "To supervise does not mean to do the work in detail, but to see that it is done. It means to oversee, with power of direction." This definition was quoted with approval in Egner v. States Realty Co., 223 Minn. 305, 316, 26 N.W.2d 464, 471, 170 A. L. R. 500, 510.

The grant of the power of supervision and administration implies a duty to exercise it. In fact, the language of the constitution is mandatory that we must do so. And necessarily this power must apply to something beyond the ordinary appellate procedure and correction of errors at law, which are also provided for in Article V, section 4, of the Constitution. The remedy for mistakes of law or fact in individual cases is by appeal, or certiorari, or other proper proceeding. A judge has a right to be wrong so far as any discipline by this court is concerned except as his decisions may be reversed or writs sustained.

But when there is apparent a pattern of procedure which shows a consistent disregard for the rights of litigants, or an arbitrary and capricious course of conduct in the handling of cases, or an oppressive and improper use of the power of the court, it is our duty to exercise our supervisory and administrative powers to insure the correction of such abuses. Complaints have been lodged with this court concerning the judicial

conduct of the two judges of the Municipal Court of the City of Cedar Rapids. Our investigation discloses a need for correction.

## JUDGE LOREN M. HULLINGER, JR.

 The original complaint made to us concerned the dismissal of certain cases brought by the traffic weight department of the Iowa State Highway Commission which charged overloading by truckers in the City of Cedar Rapids. Several of these were dismissed by Judge Hullinger, for the stated reasons that he did not believe the statutes regarding overloading should be applied in cities and towns; that the City of Cedar Rapids should enact an ordinance following the state law if it wished its streets protected against overloads; the traffic weight department was carrying on "a crusade"; and he referred to section 795.5, Code of 1962, as permitting the dismissal of criminal charges upon the court's own motion, "in the furtherance of justice."

It appears that Judge Hullinger has on many occasions dismissed criminal cases, both those charging violations of state statutes and of city ordinances, without hearing or giving the prosecuting authorities any opportunity to present their cases. While procedures in the handling of minor offenses may understandably be informal to a considerable extent, a fair opportunity for each side to present its case must be afforded. Arbitrary handling of cases in the manner stated above is not in the interest of proper administration of the courts. It is true section 795.5, Code of 1962, permits the court to dismiss criminal charges on its own motion, "in the furtherance of justice." However, justice is not "furthered" by wholesale dismissals of cases with no opportunity for each side to be heard and for no better reason than that the presiding judge thinks the offended statutes are unfair in their application.

 Justified complaint is also made that Judge Hullinger has unduly delayed decision in several cases, both criminal and civil. Litigants are entitled to have their cases determined with reasonable expedition, and this has too frequently not been observed. There is also evidence that some cases, usually informa-

tions in criminal cases, have disappeared and cannot now be located. Whether this is due to fault of the judges or of inefficient handling of papers in the clerk's office has not been ascertained. In any event, no well conducted court should permit this to happen.

### JUDGE HOWARD W. McLAUGHLIN.

Many of the criticisms lodged against Judge Hullinger also apply to Judge McLaughlin. He has also arbitrarily refused to hear litigants, and has improperly criticized them. Trial of many cases has been delayed, and it has been difficult, if not impossible, for the parties to learn what has happened to them. Both judges seem at times to have handled the business of the court according to their personal whims and predilections.

Judge McLaughlin has also on occasion threatened to use the power of the court oppressively and unjustifiably, through court orders, appointment of dissenting police officers as bailiffs to bring them directly under his control, and otherwise. He has been for some months past engaged in controversies with both the city council of Cedar Rapids and the county auditor's office concerning expense accounts for sums claimed to have been expended by him on a trip to New York City in June of 1964 to attend a traffic court school conducted by the American Bar Association, and to observe the operation of juvenile courts in other cities. His claims were questioned by both authorities. Under date of July 14 Judge McLaughlin wrote a letter to the city council in which, after discussing some of the items of his claim, he closed with this statement: "You are further advised that my said claim has been determined by this Court to be a proper court expense and that if this reimbursement claim is not paid forthwith, an appropriate order to effectuate its payment shall be issued." (Signed) "H. McLaughlin, Judge of the Municipal Court."

As justification for this, Judge McLaughlin cites Code section 602.50, which provides in material part: "All of the other expenses of maintaining said court [the Municipal Court] not otherwise provided for in this chapter shall be paid from the city treasury." It is his contention that his trip referred to

above was a proper expense of the court, and that the reasonableness and propriety of his claim are for the sole determination of the court, and may not be questioned by the city council. It is our conclusion that this amounts to a holding that the claimant may pass upon his own claim and compel its payment by a court order issued by himself. The threat of such an order is an improper and oppressive use of the power of the court for the personal advantage of the judge.

 Our attention is also called to the fact that the Cedar Rapids telephone directories issued under dates of October 1962 and November 1963 contain both in the alphabetical listings and the classified pages—the "yellow pages"—these respective data: "McLaughlin Howard W lwyr 801 Higley Bldg." for 1962, and "McLaughlin Howard W lwyr 537 Higley Bldg" for 1963, with the same telephone number for each. A former office associate of Judge McLaughlin when he was engaged in the practice of law has at all times, and does now, occupy the offices. Both directories were printed and distributed after Judge McLaughlin assumed his judicial duties. There is no evidence that Judge McLaughlin is now actually engaged in the practice of law, in violation of section 605.15, Code of 1962, except as the publishing of his name as a lawyer in the telephone directories, especially in the classified lists, appears to so proclaim to the general public. To that extent it is a holding out that he is practicing law. This is a violation of Canon 31 of the Canons of Judicial Ethics of the American Bar Association, which have been adopted as rules of this court by Court Rule 119. Judge McLaughlin is subject to criticism for this violation of judicial ethics and of the governing statute.

### Summary.

Both Judge Hullinger and Judge McLaughlin have been guilty of a course of arbitrary conduct of their judicial duties which cannot be approved by this court. They have unduly delayed trial and decision of many cases. Judge McLaughlin has also used, or threatened to use, the powers of his office oppressively, and has violated Court Rule 119 of the Supreme

Court and Canon 31 of the Canons of Judical Ethics. We do not attempt to say how cases should be decided; only that they should be decided, not lost, or mislaid, or unreasonably delayed; with fair opportunity for all litigants to be heard and without prejudging or arbitrary disregard of the law.

 Courts are not omnipotent; they have considerable power, but it must be exercised fairly and without oppressive use or threats of use. Judges should likewise be meticulous in observing the Canons of Judicial Ethics, and should be most careful to avoid becoming involved in public controversies.

It has been well said: "A long line of cases shows that it is not merely of some importance but is of fundamental importance that justice should not only be done, but should manifestly and undoubtedly be seen to be done. . . . . Nothing is to be done which creates even a suspicion that there has been an improper interference with the course of justice." Lord Howard, C. J., in Rex v. Sussex Justices, 1 K. B. 256, 259.

We conclude that opportunity to correct the objectionable and disapproved practices pointed out above should be given, with continued surveillance by this court.